Benjamin D. Johnson (10275)
BENNETT TUELLER JOHNSON & DEERE
3165 E. Millrock Dr., Suite 500
Salt Lake City, Utah 84121
Telephone: (801) 438-2000
Fax: (801) 438-2050
Email: ben.johnson@btjd.com
*Attorneys for Respondent*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SENTIENT LASERS, LLC, | **MOTION TO VACATE** |
| Petitioner, | **ARBITRATION AWARD** |
| vs. | Civil No. 2:21-cv-00767-HCN-CMR |
| ALBANY COSMETIC AND LASER, INC., | District Judge Howard C. Nielson, Jr. |
| Respondent. | Magistrate Judge Cecilia M. Romero |

Respondent Albany Cosmetic and Laser, Inc. ("*Albany*"), by its counsel, hereby submits this Motion to Vacate Arbitration Award (the "*Motion*").

### RELIEF REQUESTED AND GROUNDS

Petitioner seeks to confirm an arbitration award. Instead, the Court should vacate the arbitration award for the reasons set forth herein, in particular because of the admitted bias of the arbitrator and because the arbitrator exceeded his authority.

### RELEVANT FACTUAL BACKGROUND

1. Sentient Lasers, LLC ("*Sentient*") sold Albany Cosmetic and Laser Clinic medical spa machines and related equipment (collectively, the "*Equipment*") pursuant to an agreement signed on April 30, 2019 (the "*Agreement*"). *See* Declaration of Mohammed Kamal

Alhallak (the "***Alhallak Declaration***.") at ¶¶ 1-4, Exhibit 1. The Alhallak Declaration is attached hereto as Exhibit A.

2.  The Agreement clearly lists the parties to the Agreement as "Sentient Lasers, LLC" and "Albany Cosmetic and Laser Clinic." *See id*. ¶¶ 5-7.

3.  After the purchase of the Equipment, Albany Cosmetic and Laser Clinic complained about the condition of the Equipment. *See id*. ¶ 8.

4.  The Dispute Resolution provision of the Agreement states, in part: "The Parties agree that any dispute, controversy, or claim arising out of, relating to, or in connection with this Agreement, including but not limited to issues regarding the formation, applicability, breach, termination, validity or enforceability thereof, shall be submitted for extrajudicial resolution only; first to mediation, and if not resolved in mediation, then to arbitration." *See* Alhallak Declaration, Exhibit 1 at p. 6, Ex. A.

5.  On November 19, 2020, Sentient initiated an arbitration action with the International Centre for Dispute Resolution (the "***ICDR***") based on the arbitration provision contained in the Agreement. *See* Notice of Arbitration. A true and correct copy of the Notice of Arbitration is attached hereto as Exhibit B.

6.  No mediation was held prior to the initiation of the arbitration as required by the Dispute Resolution provision. *See* Alhallak Declaration, ¶¶ 9-10, Ex. A.

7.  In the Notice of Arbitration, Sentient brought claims for void warranty, defamation, and interference. *See* Notice of Arbitration, Ex. B.

8.  Despite the Agreement listing "Albany Cosmetic and Laser Clinic" as party to the Agreement, Sentient initiated the arbitration against "Albany Cosmetic and Laser, Inc." *See id*.

9. Michael D. Zimmerman (the "*Arbitrator*") was selected by the ICDR to be the arbitrator, and as part of the selection process, he prepared and signed a General Arbitrator and Oath Form (the "*Oath Form*"). *See* Oath Form. A true and correct copy of the Oath Form is attached hereto as Exhibit C.

10. In the Oath Form, the Arbitrator was asked: "Are you aware of any other information that may lead to a justifiable doubt as to your impartiality or independence or create an appearance of partiality?" ("*Question 15*"). *See* Oath Form at 2, Ex. C.

11. The Arbitrator answered "Yes" to Question 15, indicating that there was a "justifiable doubt" as to his "impartiality or independence." *Id.*

12. After a challenge to Zimmerman's impartiality was raised, the Arbitrator commented on his answer to Question 15. *See* Arbitrator Email. A true and correct copy of the Arbitrator Email is attached hereto as Exhibit F. The Arbitrator only said he had no recollection of why he answered in the affirmative to Question 15 and did not refute any bias. *See id.*

13. Application of the Agreement's arbitration provision resulted in an arbitration award against "Albany Cosmetic and Laser, Inc." (the *Final Order*"). *See* Final Order. A true and correct copy of the Final Order is attached hereto as Exhibit E.

14. The Final Order included rulings on issues not related to the Agreement including defamation, intentional interference with existing or potential economic relations, Lanham Act violations, and trademark infringement. *See* Final Order at 2–5, Ex. E.

15. Violations of the Lanham Act and trademark infringement were not even mentioned in the Notice of Arbitration as subjects of the arbitration. *See* Notice of Arbitration, Exhibit B.

16. Respondent suffered from medical problems with his eyes and underwent several eye surgeries around the time of the arbitration proceedings, which prevented him from fully participating in those proceedings. *See* Alhallak Declaration, ¶¶ 13–14, Ex. A.

17. After the Arbitrator issued his Final Order, Respondent received communications from the ICDR indicating that a final award has not been issued yet but would be issued by March 30, 2022. *See id.* ¶¶ 15–17.

18. Due to the Arbitrator's stated bias and other defects in the Final Order, Respondent filed a Motion to Vacate with the ICDR, requesting that the Final Order be vacated and that the proceedings be repeated. *See* ICDR Motion to Vacate. A true and correct copy of the ICDR Motion to Vacate is attached hereto as <u>Exhibit D</u>; Alhallak Declaration, ¶ 12, Ex. A.

19. The ICDR has yet to rule on the Motion to Vacate Arbitration Proceedings filed by Albany. *See* Alhallak Declaration, ¶ 18, Ex. A.

## ARGUMENT

**I.     The Arbitrator Stated He Had Reasons to Doubt His Own Impartially.**

The Federal Arbitration Act states that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . where there was *evident partiality* or corruption in the arbitrators." 9 U.S.C. § 10(a)(2) (emphasis added). "A fundamentally fair hearing requires . . . that the decisionmakers are not infected with bias." *Cline v. Chase Manhattan Bank USA, Nat. Ass'n*, No. 2:07CV650 DAK, 2008 WL 4200154, at *8 (D. Utah Sept. 12, 2008). In other words, "[C]lear evidence of impropriety . . . justifies the denial of summary confirmation of an arbitration award." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982). Evidence

of bias means "evidence of bias or interest of an arbitrator that is direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Legacy Trading Co. v. Hoffman*, 363 F. App'x 633, 635 (10th Cir. 2010) (cleaned up).

By answering "Yes" to Question 15, the Arbitrator admitted he would lack impartiality while acting as the arbitrator. The Arbitrator never gave a reasonable explanation as to why he answered in the affirmative, all that is known is that he admitted to a "justifiable doubt as to [his] impartiality or independence." Little can be more direct and definite than an arbitrator's own admission of bias. Therefore, the Court should vacate the Final Order.

## II. The Arbitrator Exceeded His Powers When Issuing His Ruling.

The Federal Arbitration Act states that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . *where the arbitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4) (emphasis added). In this case, the Arbitrator exceeded his powers in two different ways: first, by ruling on issues beyond the alleged breach of contract, and second, by ruling against a party with whom there is no agreement.

### A. The Arbitrator exceeded his powers when ruling on issues beyond the contract.

Section 10(a)(4) "has been interpreted as occurring when an arbitrator rules on matters outside of his proper consideration." *Valentino v. Smith*, No. CIV-91-564-AR, 1992 WL 427881, at *5 (W.D. Okla. Sept. 30, 1992). "The power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed." *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir.

5

1991). Thus, when a tort claim constitutes an "independent wrong from any breach" of the contract, it "does not require interpretation of the contract and is not arbitrable," *Tracer Rsch. Corp. v. Nat'l Env't Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994), even if there is a connection between a breach of contract and the tort claims. *See Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1568 (11th Cir.1984). A reviewing court may conclude "that the arbitrator exceeded his authority" if the court "determine[s] that the award covers areas not contemplated by the submission agreement or determine[s] that the award is without foundation in reason or fact." *Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008) (internal quotation marks omitted); *see, e.g., Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979) (vacating award because arbitrators ruled on issues not submitted to them).

By signing the Agreement, the parties agreed to mediate (which was never held and a violation of the Agreement)—and, if necessary, arbitrate—issues "regarding the formation, applicability, breach, termination, validity or enforceability" of the Agreement. *See* Alhallak Declaration, Exhibit 1 at 6. In other words, the parties agreed that disputes regarding the sale and purchase of the Equipment were to be arbitrated, not unrelated tortious conduct such as defamation, improper intentional interference with economic relations, Lanham Act violations, or trademark infringement—issues that the Arbitrator independently chose to rule on and several of which were not included in the Notice of Arbitration (Lanham Act, trademark infringement). *See* Final Order, Ex. E; Notice of Arbitration, Ex. B. By ruling on these claims—which are beyond the scope of the Agreement—the Arbitrator exceeded his powers and violated the Federal Arbitration Act. Therefore, the Court should vacate the Final Order and allow the proceedings to be repeated.

> B. *The Arbitrator exceeded his powers when ruling against a party with whom there is no agreement.*

It is obvious that a plaintiff cannot sue a defendant for a breach of contract if the plaintiff has no contract with the defendant. *See Hiatt v. Brigham Young Univ.*, 512 F. Supp. 3d 1180, 1184 (D. Utah 2021) ("In Utah, the necessary elements of a breach of contract claim are (1) a contract . . . ."). "It is axiomatic that an individual not a party to a contract may not be held liable for a breach of that contract." *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901 (10th Cir. 2005) (cleaned up); *see also Catlin v. Salt Lake City Sch. Dist.*, No. 2:08-CV-00362-CW-PMW, 2014 WL 4662466, at *8 (D. Utah Sept. 18, 2014) (holding that a defendant "cannot be liable for any alleged breach of a contract to which he was not a party"). Thus, to receive an enforceable award, the plaintiff must sue the correct party. *See, e.g.*, *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1295 n.7 (9th Cir. 2013) (J. Smith, Concurring) ("To obtain any legal relief, a plaintiff must sue the correct entity.").

While there is an Agreement between Sentient and "Albany Cosmetic and Laser Clinic," there is no agreement between Sentient and "Albany Cosmetic and Laser, Inc." Any arbitration proceedings should have been commenced against Albany Cosmetic and Laser Clinic. By issuing a ruling against a party that is not subject to the arbitration agreement, the Arbitrator has exceeded his powers. Sentient now seeks to confirm that ruling and collect against an entity with which it does not have an arbitration agreement. Thus, the Court should vacate the Final Order and allow the proceedings to be repeated.

### III.   It Is Unclear Whether a Final Award Exists.

The Federal Arbitration Act states that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any

party to the arbitration . . . where the arbitrators exceeded their powers, *or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made*." 9 U.S.C.A. § 10(a)(4) (emphasis added).

For an arbitrator's award to be considered final, two events must occur: "First, the award must be completed, or executed, by the arbitrator. Second, the award must be delivered or declared." *United Steelworkers of Am., AFL-CIO-CLC v. Ideal Cement Co., Div. of Ideal Basic Indus.*, 762 F.2d 837, 842 (10th Cir. 1985). "[T]he law is clear that the mere act of signing an award cannot finalize it" and "[t]he signed award must be delivered or declared for it to become final." *Id.*; *see also United Transp. Union v. Gateway W. Ry. Co.*, 284 F.3d 710, 713 (7th Cir. 2002) ("The Federal Arbitration Act is explicit that an award is unenforceable unless final, and an award that was never made (executed, perhaps, but not issued) is the best example of a nonfinal award that occurs to us.").

After the Arbitrator issued his Final Order, Respondent received communications from the ICDR suggesting that a final award had, in truth, not yet been entered. For example, on February 4, 2022, Respondent received an email stating, "This will serve to confirm that, according to parties' agreement, Claimant shall submit its comments regarding the challenge by close of business February 25, 2022. The Arbitrator shall not be copied on any comments related to the challenge. This will also serve to confirm that *the ICDR has determined that the final award shall be made by no later than March 30, 2022*." *See* Email from the ICDR director, Alhallak Declaration, Exhibit 3 (emphasis added). This email and others like it suggest that, while the Arbitrator may have signed an award, that award has not yet been officially "delivered or declared." Despite Respondent's inquiries on the matter, the ICDR has failed to clarify the

meaning of its communications. Thus, because there remain unresolved questions about whether "a mutual, final, and definite award" has been entered the Final Order cannot be confirmed. If it cannot be confirmed, the Court should instead vacate the Final Order.

IV.     **There Is a Pending Motion to Set Aside the Final Order.**

Article 14 of the International Dispute Resolution Procedures states: "A party may challenge an arbitrator whenever circumstances exist that give rise to justifiable doubts as to the arbitrator's impartiality or independence . . . . The Administrator, on its own initiative, may remove an arbitrator for failing to perform his or her duties." *See* International Dispute Resolution Procedures at 22. A true and correct copy of the International Dispute Resolution Procedures is attached hereto as Exhibit G.

On February 22, 2022, Respondent filed a Motion to Vacate Arbitration Proceedings with the ICDR director (the "***ICDR Motion to Vacate***"), in which Respondent informed the ICDR director of multiple issues with the Final Order, namely, evidence of the Arbitrator's partiality and that the Arbitrator had exceeded his authority. *See* ICDR Motion to Vacate, Ex. D. The ICDR has yet to rule on the Motion to Vacate. However, despite the pendency of this Motion to Vacate, Petitioner has requested that this Court confirm the Final Order. Because the Motion to Vacate is still before the ICDR (specifically because of evidence of arbitrator partiality), the Court cannot confirm the Final Order.  Instead, it should be vacated.

V.      **The Arbitrator Is Guilty of Misconduct for Not Postponing the Arbitration.**

The Federal Arbitration Act states that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . *where the arbitrators were guilty of misconduct in refusing to*

9

*postpone the hearing*, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3) (emphasis added).

A court may vacate an arbitration award "if it appears that 'misconduct' by an arbitrator prejudiced the rights of a party to the proceeding." *Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1140–41 (10th Cir. 2008). "[T]he Tenth Circuit has held that courts have created a basic requirement that an arbitrator must grant the parties a fundamentally fair hearing." *Cline v. Chase Manhattan Bank USA, Nat. Ass'n*, No. 2:07CV650 DAK, 2008 WL 4200154, at *8 (D. Utah Sept. 12, 2008) (cleaned up).

In his Final Order, the Arbitrator recognized that he "proceeded in the absence of the Respondent" in several arbitration proceedings. *See* Final Order at 1, Ex. E. The reason for Respondent's absence is that during those proceedings, Respondent suffered from various medical problems with his eyes. In fact, Respondent underwent a number of eye surgeries throughout 2020 and 2021. These issues rendered Respondent unable to fully participate in those proceedings. *See id*. Because the Arbitrator did not postpone the proceedings, Respondent did not have the opportunity to be adequately heard or present evidence. Despite Respondent's inability to attend, the Arbitrator continued with the proceedings, eventually issuing his Final Order. Because Respondent was robbed of the opportunity for a "fundamentally fair hearing," the Court should vacate the Final Order.

## CONCLUSION

For the reasons stated, the Motion should be granted.

DATED this 15th of March 2022.

BENNETT TUELLER JOHNSON & DEERE

/s/ Benjamin D. Johnson
Benjamin D. Johnson
*Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March 2022, I caused a true and correct copy of the foregoing **MOTION TO VACATE ARBITRATION AWARD** to be served by Notice of Electronic Filing upon the following:

Adam D. Wahlquist (12269)
Jacob A. Green (15146)
KIRTON MCCONKIE
Thanksgiving Park Four
2600 W. Executive Pkwy, #400
Lehi, UT 84043
(801) 426-2100
awahlguist@kmclaw.com
jgreen@kmclaw.com
*Attorney for Petitioner Sentient Lasers, LLC*

/s/ Benjamin D. Johnson

11